T.C. Memo. 2009-140

UNITED STATES TAX COURT

JAMES A. HAIGH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16461-07.                    Filed June 15, 2009.

James A. Haigh, pro se.

Henry N. Carriger, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined a deficiency of $1,473 in petitioner's Federal income tax (tax) for his taxable year 2004.

The issues for decision for petitioner's taxable year 2004 are:[1]

(1) Is petitioner entitled to married filing separately filing status?  We hold that he is not.

(2) Is petitioner entitled to certain itemized deductions in excess of those claimed in the tax return that he filed with Shirley R. Haigh?  We hold that he is not.

(3) Is the distribution that Shirley R. Haigh received during 2004 from her individual retirement account subject to the additional tax under section 72(t)[2] that respondent determined?  We hold that it is.

(4) Does petitioner have total and taxable Social Security benefits in the respective amounts that respondent determined?  We hold that he does.

(5) Is petitioner entitled to relief under section 6015?  We hold that he is not.

---

[1]In addition to the issues for decision for petitioner's taxable year 2004 that are listed below in the text, there are other questions relating to certain determinations in the notice for that year that are computational in that their resolution flows automatically from our resolution of certain of the issues that we address herein.

[2]All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time petitioner filed the petition in this case, he resided in Iowa.

Petitioner is a licensed professional engineer who at times not disclosed by the record specialized in consulting on issues relating to environmental engineering and environmental law and regulation. At times not disclosed by the record, petitioner also spent a total of five years as a licensed financial advisor who performed consulting work for certain small business development corporations and their respective owners. In that role, petitioner aided minorities and women who wanted to establish small businesses by, inter alia, helping them (1) create the entities through which to conduct their respective businesses, (2) obtain loans, (3) establish accounting systems, including cost accounting systems, and (4) install appropriate accounting and tax computer software. Petitioner did not prepare tax returns for his clients as part of the services that he performed as a licensed financial advisor.

In 1984, petitioner was involved in an automobile accident and suffered a broken neck. Beginning around 2000 petitioner became a patient at a pain clinic to which he was referred by certain staff at the Mayo Clinic. He has been taking certain

prescription medications in order to alleviate the pain associ-ated with the neck injury that he suffered in 1984.

On November 27, 2004, petitioner married Shirley R. Haigh (Ms. Haigh). (We shall refer to petitioner and Ms. Haigh as the Haighs.) Before their marriage, petitioner and Ms. Haigh exe-cuted a prenuptial agreement (prenuptial agreement) that re-quired, inter alia, that they file joint tax returns during their marriage unless it was financially advantageous, and both parties agreed, to file separate tax returns.

In 2004, before petitioner and Ms. Haigh married and before she was 59-1/2 years old, Ms. Haigh received a distribution of $13,977.12 (IRA distribution) from her individual retirement account. The Hartford Life Insurance Co. (Hartford) reported that IRA distribution in Form 1099-R, Distributions From Pen-sions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. (Ms. Haigh's Form 1099-R), that it issued to Ms. Haigh for her taxable year 2004.

During 2004, petitioner received Social Security benefits totaling $18,986.20 from the Social Security Administration (SSA). The SSA reported that total amount of benefits in Form SSA-1099, Social Security Benefit Statement (Form SSA-1099), that it issued to petitioner for his taxable year 2004.

Petitioner prepared his personal and business tax returns, including Form 1040, U.S. Individual Income Tax Return, that he

prepared for Ms. Haigh and himself and that the Haighs timely filed for their taxable year 2004 (2004 joint return). Before petitioner prepared that return, Ms. Haigh gave him Ms. Haigh's Form 1099-R in which Hartford reported the $13,977.12 IRA distribution that she received during 2004. When petitioner was preparing the 2004 joint return, he knew that Ms. Haigh had received the IRA distribution in 2004 before she was 59-1/2 years old and that that so-called early distribution was subject to an additional tax.

In the 2004 joint return, the Haighs (1) included in income, inter alia, Ms. Haigh's $13,977.12 IRA distribution, (2) showed total and taxable Social Security benefits of $18,437 and $2,788.13, respectively, adjusted gross income of $54,972.01, taxable income of $29,867.61, and total tax of $3,766, and (3) claimed total tax payments of $5,910.40 and a refund due of $2,144.40. In the 2004 joint return, the Haighs did not report any additional tax imposed by section 72(t) (10-percent additional tax) with respect to Ms. Haigh's IRA distribution.[3]

On March 21, 2005, respondent issued Notice CP-16 to the Haighs.[4] In that notice, respondent informed the Haighs that

[3]Line 59 of the 2004 joint return is titled "Additional tax on IRAs, other qualified retirement plans, etc."

[4]Internal Revenue Manual pt. 3.14.1.6.12.6 and 3.14.1.6.12.6.5 (Jan. 1, 2009) provides that Notice CP-16 is used to notify a taxpayer who has filed a tax return in which the
(continued...)

they had incorrectly calculated the amount of taxable Social Security benefits shown in the 2004 joint return (petitioner's computational error) and that respondent had corrected that error. Respondent's correction of petitioner's computational error resulted in respective increases of (1) $12,883 in the adjusted gross income, (2) $13,852 in the taxable income, and (3) $2,078 in the total tax that the Haighs showed in that return. As a result of the adjustments in Notice CP-16, respondent reduced the refund claimed in the 2004 joint return by $2,078 to $66.40 and applied that refund to an outstanding tax liability for the taxable year 2003.[5]

On January 29, 2007, respondent issued Notice CP-2000 to the Haighs.[6] In that notice, respondent proposed the following three adjustments to the Haighs' 2004 joint return: (1) a 10-percent additional tax of $1,398 with respect to the IRA distribution that Ms. Haigh received in 2004, (2) an increase of $549 to

---

[4](...continued) taxpayer claimed a refund that (1) the taxpayer made one or more mathematical errors in that return, (2) the Commissioner of Internal Revenue (Commissioner) corrected those mathematical errors, and (3) the Commissioner applied any corrected refund amount to offset other liabilities of the taxpayer.

[5]Notice CP-16 does not specify whether the tax liability for the taxable year 2003 to which respondent applied the refund of $66.40 was attributable to petitioner or to Ms. Haigh, who were not married to each other during that year.

[6]Notice CP-2000 is used to notify taxpayers of proposed adjustments to their tax liabilities.

petitioner's total Social Security benefits,[7] and (3) an increase of $467 to petitioner's taxable Social Security benefits.[8]

At no time before February 25, 2007, were petitioner and Ms. Haigh divorced or legally separated. On February 24, 2007, petitioner and Ms. Haigh began living apart. On or about March 6, 2007, Ms. Haigh initiated a proceeding for divorce in the Iowa District Court, Woodbury County. That proceeding was still pending at the time of the trial in this case.

On February 24, 2007, petitioner sent a letter to respondent (petitioner's February 24, 2007 letter) to which he attached completed Form 12507, Innocent Spouse Statement (petitioner's Form 12507). In petitioner's Form 12507, petitioner indicated that when he was preparing the 2004 joint return Ms. Haigh showed him a document indicating that she had paid a penalty on her IRA distribution. In that form, petitioner also indicated that when he questioned Ms. Haigh about that document she "refused to

---

[7]The increase of $549 to petitioner's total Social Security benefits is the difference between (1) $18,986, the amount of total Social Security benefits that the SSA reported in Form SSA-1099 that it issued to petitioner for petitioner's taxable year 2004, and (2) $18,437, the amount of total Social Security benefits that the Haighs reported in the 2004 joint return.

[8]The increase of $467 to petitioner's taxable Social Security benefits is the difference between (1) $16,138, the portion of petitioner's total Social Security benefits of $18,986 that respondent proposed is taxable in Notice CP-2000 issued to the Haighs on Jan. 29, 2007, and (2) $15,671, the portion of petitioner's total Social Security benefits of $18,437 reported in the 2004 joint return that respondent calculated was taxable in Notice CP-16 issued to the Haighs on Mar. 21, 2005.

contact the plan to obtain a statement showing how this amount [the penalty] was allocated."  In both petitioner's February 24, 2007 letter and petitioner's Form 12507, petitioner requested that respondent permit him to file an amended tax return for his taxable year 2004 in order to elect married filing separately filing status (married filing separately status).

Respondent treated the receipt of petitioner's February 24, 2007 letter and petitioner's Form 12507 as the filing by petitioner of Form 8857, Request for Innocent Spouse Relief, and began an investigation to determine whether he was eligible for relief under section 6015.

On April 16, 2007, respondent issued to the Haighs a notice of deficiency for their taxable year 2004 (2004 notice).  In the 2004 notice, respondent determined that the Haighs are subject to the 10-percent additional tax with respect to the IRA distribution that Ms. Haigh received in 2004 before she was 59-1/2 years old.  Respondent also determined that petitioner received total and taxable Social Security benefits of $18,986[9] and $16,138, respectively.[10]

---

[9]In the 2004 notice issued on Apr. 16, 2007, and in Notice CP-2000 issued on Jan. 29, 2007, respondent rounded to the nearest dollar the total amount of Social Security benefits that respondent determined petitioner received during 2004.  For convenience, we generally shall do the same.

[10]Respondent's determinations in the 2004 notice are identical to the adjustments that respondent proposed in Notice CP-2000
(continued...)

On May 22, 2007, Ms. Haigh sent to respondent completed Form 12508, Questionnaire for Non-Requesting Spouse (Ms. Haigh's Form 12508). In that form, Ms. Haigh indicated that petitioner had prepared the 2004 joint return and that she gave him her "W-2s and other documentation" before petitioner prepared that return. Ms. Haigh also indicated in Ms. Haigh's Form 12508 that "He [petitioner] asked about the withdrawal [the IRA distribution]. I gave him the statement from the bank. I told him I paid a penalty but did not know for sure about a tax consequence."

Respondent assigned an examiner (respondent's examiner) to review petitioner's request for relief under section 6015. After reviewing that request, respondent's examiner prepared a workpaper dated June 8, 2007 (examiner's workpaper). The examiner's workpaper stated, inter alia: "Rs [requesting spouse, here petitioner] had actual knowledge of the income [the IRA distribution], he prepared the return, failed his duty of inquiry, no hardship or abuse, equitable to hold liable".

Respondent's examiner denied petitioner's request for relief under section 6015(b) and (c). The examiner's workpaper stated, inter alia:

---

[10](...continued)
issued on Jan. 29, 2007.

Taxpayers are currently divorced, widowed, legally separated, or they lived apart prior to the claim

      \*        \*        \*        \*        \*        \*        \*

Solely attributable to the NRS [nonrequesting spouse]
Erroneous items:  10% penalty on early pension withdrawal

      \*        \*        \*        \*        \*        \*        \*

RS had full actual knowledge
Explanation:  income was reported on return, did not claim the 10% penalty on back of 1040, line 59 [Reproduced literally.]

Respondent's examiner also denied petitioner's request for relief under section 6015(f).  The examiner's workpaper stated, inter alia:

**Tier II factors:**
Taxpayers are currently divorced, widowed,        **For**
legally separated, or they had been members
of separate households prior to the claim for
at least 12 consecutive months
No economic hardship                        **Against**
Explanation:  no info given, he rec's over
               $1,000 a month in SS [Social Security]
No marital abuse
No poor mental or physical health
No legal obligation established

    **Knowledge:**
    Background:
      RS - unknown               NRS - unkn
    Involvement:
      RS - separate bank accounts NRS -
    Lifestyle changes:  unknown
    NRS's elusiveness:  none, RS prepared the returns
    Duty to inquire:     he prepared the return,
                      he knew about the pension
                      withdrawal, NRS wthd the
                      income before they were
                      married, but she gave the
                      1099 to RS, the income was

```
                              reported on return, penalty
                              was not
         Living arrangements: married
                              11-27-2004
RS had knowledge or reason to know               **Against**
Explanation:   income was reported
               on the return, did
               not claim line 59 on
               1040
No significant benefit gained                        **For**
Made a good faith effort to comply                   **For**
with the tax laws
Explanation:   has not filed 2006,
               but his only income
               is SS
Unique circumstances:  none
Not meeting Tier II factors - deny claim
Tier II consideration:   Based on the above facts it is
                         equitable to hold the RS lia-
                         ble for the balance.  [H]ad
                         actual knowledge, no hardship
                         or abuse
```

On June 19, 2007, respondent's Cincinnati centralized innocent spouse operation (CCISO) sent to petitioner Letter 3661C (CCISO's June 19, 2007 letter).[11]  In that letter, CCISO notified petitioner that it had denied his claim for relief under section 6015.

On June 25, 2007, Ms. Haigh paid to respondent $1,726.61 as a bond against the deficiency that respondent determined in the 2004 notice and interest as provided by law as of that date. Around October 1, 2007, respondent applied that bond as a payment against that deficiency and that interest.

---

[11]The record does not contain CCISO's June 19, 2007 letter.

On July 6, 2007, petitioner sent to respondent a letter (petitioner's July 6, 2007 protest) in which he protested the denial of relief under section 6015 in CCISO's June 19, 2007 letter. In petitioner's July 6, 2007 protest, petitioner also asserted that the deficiency that respondent determined in the 2004 notice was wrong because respondent determined in that notice that during 2004 the Haighs received more gross income than they in fact received, which caused respondent's determination of petitioner's taxable Social Security benefits to be incorrect. In petitioner's July 6, 2007 protest, petitioner restated his request that respondent allow him to file an amended return for his taxable year 2004 in order to elect married filing separately status.

On January 15, 2008, respondent assigned an Appeals officer in respondent's Appeals Office (respondent's Appeals officer) to consider petitioner's July 6, 2007 protest. Respondent's Appeals officer sent three letters to petitioner, dated January 16, January 17, and February 4, 2008, respectively. In the letter dated January 16, 2008, respondent's Appeals officer explained to petitioner that respondent is not allowed under section 6015 to compute petitioner's tax liability for his taxable year 2004 as if his filing status were married filing separately and that relief under that section requires respondent to allocate the deficiency determined in the 2004 notice based upon the items

shown in the 2004 joint return.  In the respective letters dated January 17 and February 4, 2008, respondent's Appeals officer explained to petitioner the propriety of respondent's determination in the 2004 notice that petitioner's taxable Social Security benefits are $16,138.

On February 11, 2008, respondent's Appeals officer sent to petitioner another letter (February 11, 2008 letter).  In that letter, respondent's Appeals officer again explained the propriety of respondent's determination with respect to petitioner's taxable Social Security benefits.  In the February 11, 2008 letter, respondent's Appeals officer also informed petitioner:

> I disagree with your request to split the case into two married filing separate cases.  I disagree with allowing an [sic] innocent spouse relief.
>
> You made the decision to file jointly, I don't find you meet the criteria to qualify for innocent spouse relief and the liability has been paid.
>
> Let me know in one week if you will agree.  If not, I will forward your case for trial preparation.

In an Appeals Transmittal and Case Memo-INNSP dated February 22, 2008 (February 22, 2008 transmittal memo) that respondent's Appeals officer prepared, respondent's Appeals officer set forth his conclusions with respect to the positions that petitioner took in petitioner's July 6, 2007 protest.  With respect to petitioner's position that respondent erred in determining in the 2004 notice that petitioner's taxable Social Security benefits

are $16,138, respondent's Appeals officer concluded in the

February 22, 2008 transmittal memo:

> The petitioning husband didn't agree to the computation
> of the taxable social security, which was computational
> and mostly taxed [sic] by mathematical error proce-
> dures. * * *

> There should be no disagreement in this case, but the
> petitioner was unwilling or unable to understand the
> computations of the taxable social security income, and
> still maintains that he should be [sic] a refund from
> the original return.

With respect to petitioner's position that he is entitled to

relief under section 6015(b), respondent's Appeals officer

concluded in the February 22, 2008 transmittal memo:

> In my examination of the facts of the case, I find a
> joint return [w]as filed, **the error on the return was
> not attributable to erroneous items of the other
> spouse**, the requesting spouse may not have known about
> the error **but should have known of the error when the
> income was reported, I find it equitable to hold the
> requester liable,** and the claim was timely filed from a
> the [sic] issued notice of deficiency.

With respect to petitioner's position that he is entitled to

relief under section 6015(c), respondent's Appeals officer

concluded in the February 22, 2008 transmittal memo:

> **If the petitioning husband can meet his burden of proof
> that he is not equally liable, the portion of the
> liability attributable to the early withdrawal penalty
> could be shifted to his ex spouse.** There is no need to
> shift that liability since the other spouse has paid in
> full.

With respect to petitioner's position that he is entitled to relief under section 6015(f), respondent's Appeals officer concluded in the February 22, 2008 transmittal memo:

> Under (f) there are factors that can be used to determine if equitable relief exists.
>
> > a) There is no marital status now so either one can have relief.
> > b) Is there no economic hardship for the taxpayers, even though questionable with Jeff allegedly in bankruptcy?
> > c) There are no indications of abuse.
> > d) I believe the facts are clear in the details of the workpapers that the taxpayer kept their distance and did not know of the issues that created the deficiencies for the other spouse.
> > e) Neither spouse has the legal obligation to the income tax liability of the other outside IRS joint liability provisions.
> > f) The liability is attributable to each spouse as set out above.
>
> In response the criteria under (f), I find the spouse are not separated and working on a divorce, so I don't know if they have been separated long enough for innocent spouse relief. There is no hardship and the amount has been paid. Abuse is not an issue. Both spouses should have been aware of the issues. There is no other final legal action to determine if either spouse should pay the liability, but as stated, the other spouse has already paid. If we had to split the liability, the penalty portion could be attributable to the other spouse by computations, but it has been paid.
>
> **In summary, I don't find the petitioner meets sufficient criteria for innocent spouse relief and the issue is irrelevant since the tax has been paid.** [Reproduced literally.]

### OPINION

Petitioner has the burden of establishing that the determinations in the 2004 notice are wrong. See Rule 142(a); <u>Welch v.</u>

<u>Helvering</u>, 290 U.S. 111, 115 (1933).  Petitioner also bears the burden of proof with respect to the new issues that he is raising, including his claim under section 6015.[12]  See Rule 142(a).

Claimed Right To File an Amended Return

It is petitioner's position that although Ms. Haigh and he filed the 2004 joint return, he is entitled to file an amended return for his taxable year 2004 in order to (1) change his married filing jointly status in the 2004 joint return to married filing separately status, (2) correct erroneous determinations that respondent made in the 2004 notice, and (3) claim itemized deductions in excess of those claimed in the 2004 joint return. What petitioner apparently fails to understand is that we have jurisdiction to redetermine in a trial de novo[13] a deficiency for a taxable year properly before us.  See secs. 6213(a) and 6214(a); <u>O'Dwyer v. Commissioner</u>, 266 F.2d 575, 580 (4th Cir. 1959), affg. 28 T.C. 698 (1957).  We may redetermine the correct amount of a deficiency for a taxable year properly before us even though the amount so redetermined is greater, or less, than the amount of the deficiency that the Commissioner determined for that year.  See sec. 6214(a).  In redetermining the correct

---

[12]In a so-called stand-alone nondeficiency case, the standard of review under sec. 6015(f) is de novo.  <u>Porter v. Commissioner</u>, 132 T.C. ___ (2009).

[13]At a trial de novo, both the taxpayer and the Commissioner may present evidence in support of their respective positions on the issues presented.

amount of a deficiency for a taxable year properly before us, we may consider any issue that a party properly raises, including issues relating to the determinations in a notice of deficiency, alleged errors of the taxpayer in a tax return, filing status, and relief under section 6015. See, e.g., Powerstein v. Commissioner, 99 T.C. 466, 472-473 (1992); Naftel v. Commissioner, 85 T.C. 527, 533 (1985). We reject petitioner's position that he is entitled to file an amended return for his taxable year 2004.

Claimed Married Filing Separately Status

It is petitioner's position that he is entitled to married filing separately status for his taxable year 2004.[14] In support of that position, petitioner argues that the 2004 joint return is void because he signed that return under duress.

Section 6013(a) permits a husband and wife to file jointly a single tax return (joint return). Where spouses elect to file a joint return for a taxable year, which petitioner and Ms. Haigh did for their taxable year 2004, they are required to compute their tax for the taxable year on the aggregate income of both spouses, and the liability for that tax is joint and several. See sec. 6013(d)(3). Where spouses, like petitioner and Ms. Haigh, filed a joint return with respect to a taxable year,

_____

[14]We have rejected petitioner's position that he is entitled to file an amended return for his taxable year 2004 in order, inter alia, to elect married filing separately status.

neither spouse may thereafter elect married filing separately status for that taxable year where, as is true here, the time for filing the tax return of either spouse has expired. See Ladden v. Commissioner, 38 T.C. 530, 534 (1962); sec. 1.6013-1(a)(1), Income Tax Regs. However, a joint return for a taxable year that is signed under duress is not a joint return for that year for purposes of section 6013, and the spouse who signed the joint return under duress will not be held jointly and severally liable for any deficiency in tax that the Commissioner determines. See Stanley v. Commissioner, 81 T.C. 634, 637-638 (1983); sec. 1.6013-4(d), Income Tax Regs.

In order to prove that a taxpayer signed a joint return under duress, the taxpayer must show (1) that the taxpayer was unable to resist the demands of the taxpayer's spouse to sign the joint return and (2) that the taxpayer would not have signed the joint return absent the constraint that the taxpayer's spouse applied to the taxpayer's will. Stanley v. Commissioner, supra at 638. The determination of whether the taxpayer signed a joint return under duress is dependent on the facts and is measured by a wholly subjective standard. Id.

We have found that petitioner prepared, and timely filed with Ms. Haigh, the 2004 joint return. On the record before us, we find that petitioner has failed to carry his burden of establishing that Ms. Haigh demanded that he sign that return, let

alone that she made demands that he was unable to resist. On that record, we find that petitioner has failed to carry his burden of establishing that he signed the 2004 joint return under duress.[15]

In further support of his position that he is entitled for his taxable year 2004 to married filing separately status, petitioner argues that the 2004 joint return is void by operation of the law of the State of Iowa (Iowa law) and that respondent violated the 10th Amendment (10th Amendment) to the United States Constitution (Constitution) when respondent refused to allow petitioner to file an amended return for his taxable year 2004 in order to elect married filing separately status. As we understand petitioner's argument, (1) Iowa law required him to sign all documents needed in order to enforce the prenuptial agreement, Iowa Code Ann. sec. 596.4 (West 2001); (2) he signed the 2004 joint return in accordance with that law and the terms of the prenuptial agreement; (3) Ms. Haigh violated Iowa law and breached the prenuptial agreement when she refused to sign certain documents relating to the Haighs' taxable year 2004; (4) because of that breach the provision of the prenuptial

---

[15]Petitioner contends that respondent failed to present evidence establishing that petitioner was not under duress when he signed the 2004 joint return. Petitioner, and not respondent, bears the burden of establishing that he signed the 2004 joint return under duress.

agreement requiring petitioner and Ms. Haigh to file a joint tax return was made inoperable by Iowa law and therefore the 2004 joint return is void; and (5) respondent's refusal to allow him to file an amended tax return for his taxable year 2004 in order to elect married filing separately status fails to give effect to the Iowa law that petitioner asserts rendered the 2004 joint return void.

The 10th Amendment to the Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Assuming arguendo that petitioner's assertions with respect to the meaning and effect of Iowa law were correct, we conclude that respondent's actions did not violate the 10th Amendment to the Constitution.

On the record before us, we find that petitioner has failed to carry his burden of establishing that he is entitled for his taxable year 2004 to married filing separately status.

Claimed Itemized Deductions

It is petitioner's position that he is entitled for his taxable year 2004 to certain itemized deductions in excess of those that the Haighs claimed in the 2004 joint return. Before considering whether petitioner is entitled to any such additional itemized deductions, we address petitioner's claim that respondent violated his right to due process under the 14th Amendment

(Due Process Clause) to the Constitution when respondent refused to allow him to file an amended return for his taxable year 2004.

The Due Process Clause applies to the actions of State governments. Respondent is an officer of the Federal Government and is therefore not subject to that amendment. Respondent is subject to the Fifth Amendment to the Constitution (Fifth Amendment). That amendment provides in pertinent part: "No person shall be * * * deprived of life, liberty, or property, without due process of law". We shall construe petitioner's claim under the Due Process Clause as a claim under the Fifth Amendment.

In support of his argument under the Fifth Amendment, petitioner asserts: (1) Respondent made erroneous determinations in the 2004 notice by determining that during 2004 the Haighs received more gross income than they in fact received; (2) because of an oversight the Haighs did not claim in the 2004 joint return all of the itemized deductions to which they are entitled (Haighs' additional itemized deductions); (3) petitioner attempted to file Form 1040X, Amended U.S. Individual Income Tax Return, jointly with Ms. Haigh for the Haighs' taxable year 2004 in order to correct respondent's erroneous determinations in the 2004 notice and the Haighs' error in not claiming the Haighs' additional itemized deductions, but Ms. Haigh refused to sign that form; and (4) respondent's refusal to allow him to file an

amended return for his taxable year 2004 in order to correct the Haighs' failure to claim the Haighs' additional itemized deductions and respondent's erroneous determinations in the 2004 notice prevents him from "defending himself from unjust joint and several claims".

We have rejected petitioner's claim that he is entitled to file an amended return for his taxable year 2004. We conclude that respondent did not violate petitioner's rights under the Fifth Amendment.

We turn now to whether petitioner is entitled for his taxable year 2004 to certain itemized deductions in excess of those that the Haighs claimed in the 2004 joint return. Petitioner presented no evidence in support of his position that he is entitled to any such additional deductions. On the record before us, we find that petitioner has failed to carry his burden of establishing that he is entitled for his taxable year 2004 to certain itemized deductions in excess of those that the Haighs claimed in the 2004 joint return.

Claimed Errors in the 2004 Notice

The parties stipulated: "Petitioner and respondent agree that the proposed adjustments in tax liability included in the notice of deficiency are correct." Petitioner also testified that those determinations are correct. Petitioner nonetheless claims that there are errors in the 2004 notice.

We turn first to respondent's determinations in the 2004 notice that during 2004 petitioner received total and taxable Social Security benefits of $18,986 and $16,138, respectively. We have found, and petitioner admits, that the Haighs reported in the 2004 joint return total Social Security benefits of only $18,437. We have found, and petitioner admits, that he received $18,986.20 in total Social Security benefits as reported by the SSA in Form SSA-1099 that it issued to petitioner for his taxable year 2004. On the record before us, we sustain respondent's determination that during 2004 petitioner received $18,986[16] of total Social Security benefits.

The portion of a taxpayer's total Social Security benefits that is taxable is determined under section 86. On the record before us, we find that petitioner has failed to carry his burden of showing error in respondent's determination in the 2004 notice that $16,138 of the $18,986 of the total Social Security benefits that he received during 2004 is taxable Social Security benefits. On that record, we sustain that determination.

We turn next to respondent's determination in the 2004 notice to impose the additional tax under section 72(t) with respect to Ms. Haigh's IRA distribution. Section 72(t)(1) provides:

---

[16]See _supra_ note 9.

SEC. 72.  ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND
          LIFE INSURANCE CONTRACTS.

    (t) 10-Percent Additional Tax on Early Distribu-
tions from Qualified Retirement Plans.--

        (1) Imposition of additional tax.--If any
    taxpayer receives any amount from a qualified
    retirement plan (as defined in section
    4974(c)), the taxpayer's tax under this chap-
    ter for the taxable year in which such amount
    is received shall be increased by an amount
    equal to 10 percent of the portion of such
    amount which is includible in gross income.

Section 72(t)(2) provides certain exceptions to the 10-percent additional tax imposed by section 72(t)(1).  Petitioner admits that Ms. Haigh's IRA distribution is subject to the 10-percent additional tax under section 72(t).  Petitioner also admits that the Haighs were required to report that additional tax in the 2004 joint return.  On the record before us, we sustain respondent's determination to impose the 10-percent additional tax under section 72(t) with respect to Ms. Haigh's IRA distribution.

Claimed Relief Under Section 6015

It is petitioner's position that he is entitled to relief under section 6015 for the portion of the deficiency that respondent determined in the 2004 notice that is attributable to the 10-percent additional tax with respect to Ms. Haigh's IRA distribution.  Before considering that position, we shall address two constitutional claims that petitioner raises.

As we understand it, petitioner claims that respondent violated (1) his right to confront witnesses under the Confrontation Clause of the Sixth Amendment to the Constitution (Confrontation Clause) and (2) the Due Process Clause.[17]  In support of those claims, petitioner argues:  (1) Respondent was required, but failed, to provide him with a copy of Ms. Haigh's Form 12508; (2) respondent was required, but failed, to allow him to respond to the information contained in Ms. Haigh's Form 12508; and (3) respondent failed to produce Ms. Haigh as a witness at the trial in this case, thereby denying him the opportunity to confront and cross-examine her.

With respect to petitioner's claim under the Confrontation Clause, that clause provides in pertinent part:  "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him".  The Confrontation Clause applies only to criminal prosecutions.  See United States v. Ray, 530 F.3d 666, 668 (8th Cir. 2008).  This case is not a criminal prosecution.  We conclude that respondent did not violate any rights of petitioner under the Confrontation Clause.

---

[17]For the reasons stated above, we shall treat petitioner's claim under the Due Process Clause as a claim under the Fifth Amendment.

With respect to petitioner's claim under the Fifth Amendment,[18] that claim, inter alia, rests upon erroneous factual premises.  Petitioner's claim under the Fifth Amendment assumes that respondent had obligations to (1) provide him with the information that Ms. Haigh sent to respondent and (2) call Ms. Haigh as a witness at the trial in this case.  Section 1.6015-6(a)(1), Income Tax Regs., provides in pertinent part:  "Upon the request of either spouse, the Internal Revenue Service will share with one spouse the information submitted by the other spouse".  Petitioner could have requested a copy of Ms. Haigh's Form 12508.  He did not.  Petitioner also could have subpoenaed Ms. Haigh as a witness at the trial in this case.  See Rule 147. He did not.  We conclude that respondent did not violate petitioner's rights under the Fifth Amendment.[19]

We turn now to petitioner's position that he is entitled to relief under section 6015(b), (c), or (f) with respect to the portion of the deficiency attributable to the 10-percent additional tax imposed with respect to Ms. Haigh's IRA distribution.

---

[18]See supra note 17.

[19]Assuming arguendo that the factual premises underlying petitioner's claim under the Fifth Amendment were correct, we nonetheless would conclude that respondent did not violate petitioner's rights under the Fifth Amendment.

Section 6015(b)

Section 6015(b) provides in pertinent part:

SEC. 6015.   RELIEF FROM JOINT AND SEVERAL LIABILITY ON JOINT RETURN.

(b) Procedures For Relief From Liability Applicable to All Joint Filers.--

(1) In general.--Under procedures prescribed by the Secretary, if--

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

Section 6015(b)(3) provides:  "For purposes of this subsection, the term 'understatement' has the meaning given to such term by section 6662(d)(2)(A)."  Section 6662(d)(2)(A) provides:

> SEC. 6662.    IMPOSITION OF ACCURACY-RELATED PENALTY ON
> UNDERPAYMENTS.
>
> (d) Substantial Understatment of Income Tax.--
>
> *       *       *       *       *       *       *
>
> (2) Understatement.--
>
> (A) In general.--For purposes of paragraph (1), the term "understatment" means the excess of--
>
> (i) the amount of the tax required to be shown on the return for the taxable year, over
>
> (ii) the amount of the tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).

Section 6015(b)(1) is similar to former section 6013(e)(1).[20]  We may look at cases interpreting section 6013(e)(1) for guidance when analyzing parallel provisions of section 6015.  See Jonson v. Commissioner, 118 T.C. 106, 119 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).  The failure by a spouse requesting relief (requesting spouse) under section 6015(b) to satisfy any of the requirements of that section

---

[20]In 1998, Congress repealed sec. 6013(e) and replaced it with sec. 6015.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201, 112 Stat. 734. Sec. 6015 applies to any liability for tax remaining unpaid as of July 22, 1998.  Id. sec. 3201(g)(1), 112 Stat. 740.

prevents that spouse from qualifying for such relief. Alt v. Commissioner, 119 T.C. 306, 313 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

We shall address only whether petitioner meets the requirements of section 6015(b)(1)(C). That is because our resolution of that question resolves the question of whether petitioner is entitled to relief under section 6015(b) regarding the portion of the deficiency attributable to the 10-percent additional tax imposed with respect to Ms. Haigh's IRA distribution.

In support of his position that he meets the requirements of section 6015(b)(1)(C), petitioner argues that when he was preparing the 2004 joint return he did not know that Ms. Haigh had failed to pay the 10-percent additional tax with respect to the IRA distribution that she received in 2004. What petitioner may, or may not, have known regarding whether Ms. Haigh paid that additional tax is not material to our determining whether petitioner knew or had reason to know of the understatment of tax shown in the 2004 joint return. See sec. 6015(b)(1)(C). The Haighs were required to report the 10-percent additional tax in the 2004 joint return, regardless of whether Ms. Haigh had already paid it. We have found: (1) Petitioner prepared the 2004 joint return; (2) in that return the Haighs included in income Ms. Haigh's $13,977.12 IRA distribution; (3) when peti-

tioner was preparing that return he knew (a) that Ms. Haigh received the IRA distribution in 2004 before she was 59-1/2 years old and (b) that that distribution was subject to the 10-percent additional tax; and (4) the Haighs did not report in the 2004 joint return the 10-percent additional tax with respect to Ms. Haigh's IRA distribution.

On the record before us, we find that petitioner had actual knowledge of the understatement of tax attributable to the 10-percent additional tax with respect to Ms. Haigh's IRA distribution. On that record, we further find that petitioner has failed to carry his burden of establishing that he satisfies section 6015(b)(1)(C).

On the record before us, we find that petitioner has failed to carry his burden of establishing that he is entitled to relief under section 6015(b) for his taxable year 2004.

Section 6015(c)

Section 6015(c) provides in pertinent part:

SEC. 6015.   RELIEF FROM JOINT AND SEVERAL LIABILITY ON
             JOINT RETURN.

     (c) Procedures To Limit Liability for Taxpayers No
Longer Married or Taxpayers Legally Separated or Not
Living Together.--

          (1) In general.--Except as provided in this
     subsection, if an individual who has made a joint
     return for any taxable year elects the application
     of this subsection, the individual's liability for
     any deficiency which is assessed with respect to

the return shall not exceed the portion of such deficiency properly allocable to the individual under subsection (d).

         *       *       *       *       *       *       *

(3) Election.--

(A) Individuals eligible to make election.--

(i) In general.--An individual shall only be eligible to elect the application of this subsection if--

(I) at the time such election is filed, such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates; or

(II) such individual was not a member of the same household as the individual with whom such joint return was filed at any time during the 12-month period ending on the date such election is filed.

We shall address only whether petitioner meets the requirements of section 6015(c)(3)(A). That is because our resolution of that question resolves the question of whether petitioner is entitled to relief under section 6015(c) regarding the portion of the deficiency attributable to the 10-percent additional tax with respect to Ms. Haigh's IRA distribution.

We have found: (1) On February 24, 2007, petitioner sent to respondent petitioner's February 24, 2007 letter to which he attached petitioner's Form 12507; (2) respondent treated the

receipt of that letter and that Form 12507 as the filing by petitioner of Form 8857, Request for Innocent Spouse Relief, and began an investigation to determine whether he was eligible for relief under section 6015; (3) at no time before February 25, 2007, were petitioner and Ms. Haigh divorced or legally separated, see sec. 6015(c)(3)(A)(i)(I); and (4) on February 24, 2007, petitioner and Ms. Haigh began to live apart, see sec. 6015(c)(3)(A)(i)(II).  On the record before us, we find that petitioner does not satisfy section 6015(c)(3)(A).

On the record before us, we find that petitioner is not entitled to relief under section 6015(c) for his taxable year 2004.

Section 6015(f)

Section 6015(f) provides:

> SEC. 6015.  RELIEF FROM JOINT AND SEVERAL LIABILITY ON JOINT RETURN.
>
> (f) Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
>> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>>
>> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed procedures in Rev. Proc. 2003-61, 2003-2 C.B. 296 (Reve-

nue Procedure 2003-61) that are to be used in determining whether it would be inequitable to find the requesting spouse liable for part or all of the deficiency in question.  That revenue procedure lists seven threshold conditions (threshold conditions) which must be satisfied before the Commissioner will consider a request for relief under section 6015(f).  Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297.  Respondent concedes that those conditions are satisfied in the instant case.

Where, as here, the requesting spouse satisfies the threshold conditions, Revenue Procedure 2003-61 sets forth the following factors that are to be considered in determining whether that spouse is entitled to relief under section 6015(f):  (1) Whether the requesting spouse is separated or divorced from the nonrequesting spouse (marital status factor); (2) whether the requesting spouse would suffer economic hardship if not granted relief (economic hardship factor); (3) whether the requesting spouse knew or had reason to know of the item giving rise to the deficiency (knowledge factor); (4) whether the nonrequesting spouse has a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or agreement (legal obligation factor); (5) whether the requesting spouse received a significant benefit from the item giving rise to the deficiency (significant benefit factor); (6) whether the requesting spouse has made a good faith effort to comply with tax laws for the taxable years

following the taxable year to which the request for such relief relates (compliance factor). See Rev. Proc. 2003-61, sec. 4.03(2)(a), 2003-2 C.B. at 298.

Other factors that may be considered under Revenue Procedure 2003-61 are (1) whether the nonrequesting spouse abused the requesting spouse (abuse factor) and (2) whether the requesting spouse was in poor mental or physical health (mental or physical health factor) at the time he or she signed the tax return (return) or at the time he or she requested relief. Rev. Proc. 2003-61, sec. 4.03(2)(b), 2003-2 C.B. at 299. Where (1) the nonrequesting spouse abused the requesting spouse or (2) the requesting spouse was in poor mental or physical health at the time he or she signed the return or at the time he or she requested relief, the abuse factor or the mental or physical health factor, as the case may be, will be taken into account. Id. However, where (1) the nonrequesting spouse did not abuse the requesting spouse or (2) the requesting spouse was not in poor mental or physical health at the time he or she signed the return or at the time he or she requested relief, the abuse factor or the mental or physical health factor, as the case may be, will not be taken into account. Id.

In making our determination under section 6015(f), we shall consider the factors set forth in Revenue Procedure 2003-61 and any other relevant factors. No single factor is to be determina-

tive in any particular case, and all factors are to be considered and weighed appropriately.

With respect to the marital status factor, we have found that on February 24, 2007, petitioner and Ms. Haigh began living apart.[21]  On the record before us, we find that petitioner and Ms. Haigh were separated at the time petitioner requested relief under section 6015(f).

With respect to the economic hardship factor,[22] on the

---

[21]On or about Mar. 6, 2007, Ms. Haigh initiated a proceeding for divorce in the Iowa District Court, Woodbury County.

[22]In determining whether a requesting spouse will suffer economic hardship, Rev. Proc. 2003-61, sec. 4.02(1)(c), 2003-2 C.B. 296, 298, requires reliance on rules similar to those provided in sec. 301.6343-1(b)(4), Proced. & Admin. Regs.  That regulation generally provides that an individual suffers an economic hardship if the individual is unable to pay his or her reasonable basic living expenses.  Sec. 301.6343-1(b)(4), Proced. & Admin. Regs., provides in pertinent part:

> (ii) Information from taxpayer.--In determining a reasonable amount for basic living expenses the direc-tor will consider any information provided by the taxpayer including--
>
> (A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;
>
> (B) The amount reasonably necessary for food, clothing, housing (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or
>
> (continued...)

record before us, we find that petitioner has failed to carry his burden of establishing the amount of his basic living expenses. On that record, we also find that petitioner has failed to carry his burden of establishing that he would be unable to pay his basic living expenses if he were required to pay the portion of the deficiency determined in the 2004 notice that is attributable to the 10-percent additional tax with respect to Ms. Haigh's IRA distribution.[23]  On the record before us, we find that petitioner has failed to carry his burden of establishing that he would suffer economic hardship if not granted relief under section 6015(f).

---

[22](...continued)
professional organization, or child care payments which allow the taxpayer to be gainfully employed);

      (C) The cost of living in the geographic area in which the taxpayer resides;

      (D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;

      (E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

      (F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

[23]Indeed, we have found (1) that on June 25, 2007, Ms. Haigh paid to respondent $1,726.61 as a bond against the deficiency that respondent determined in the 2004 notice and interest as provided by law as of that date and (2) that around Oct. 1, 2007, respondent applied that bond as a payment against that deficiency and that interest.

With respect to the knowledge factor, we have found: (1) Petitioner prepared the 2004 joint return; (2) in that return the Haighs included in income Ms. Haigh's $13,977.12 IRA distribution; (3) when he was preparing the 2004 joint return petitioner knew (a) that Ms. Haigh received the IRA distribution in 2004 before she was age 59-1/2 years old and (b) that that distribution was subject to the 10-percent additional tax; and (4) the Haighs did not report in the 2004 joint return the 10-percent additional tax with respect to Ms. Haigh's IRA distribution. On the record before us, we find that petitioner had actual knowledge (1) that the IRA distribution that Ms. Haigh received in 2004 before she was 59-1/2 years old was includible in income and (2) that that distribution was subject to the 10-percent additional tax.

With respect to the legal obligation factor, on the record before us, we find that petitioner has failed to carry his burden of establishing that there is any agreement that provides that Ms. Haigh has a legal obligation to pay any outstanding tax liability that she and petitioner incurred while married.

With respect to the significant benefit factor, respondent does not dispute that petitioner did not receive a benefit beyond normal support from Ms. Haigh's IRA distribution. Normal support is not a significant benefit. Flynn v. Commissioner, 93 T.C. 355, 367 (1989).

With respect to the compliance factor, respondent does not dispute that petitioner has made a good faith effort to comply with the tax laws for taxable years after 2004.

With respect to the abuse factor, we have found: (1) In 1984 petitioner was involved in an automobile accident and suffered a broken neck; (2) beginning around 2000 he became a patient at a pain clinic to which he was referred by certain staff at the Mayo Clinic; and (3) he takes certain prescription medications in order to alleviate the pain associated with the neck injury that he suffered in 1984. Petitioner testified that, because of the pain medications that he takes, stressful situations can be disorienting and difficult for him. Petitioner asserts that Ms. Haigh abused him by intentionally creating stressful situations that could cause him to become disoriented. On the record before us, we find that petitioner has failed to carry his burden of establishing that Ms. Haigh abused him.

With respect to the mental or physical health factor, as discussed above, we have found: (1) In 1984 petitioner was involved in an automobile accident and suffered a broken neck; (2) beginning around 2000 he became a patient at a pain clinic to which he was referred by certain staff at the Mayo Clinic; and (3) he takes certain prescription medications in order to alleviate the pain associated with the neck injury that he suffered in 1984. On the record before us, we find that petitioner had

health issues at the time he signed the 2004 joint return and at the time he requested relief under section 6015. However, we have also found: (1) Petitioner prepared the 2004 joint return; and (2) when he was preparing that return he knew (a) that the IRA distribution that Ms. Haigh received in 2004 before she was 59-1/2 years old was includible in income and (b) that that distribution was subject to the 10-percent additional tax. On the record before us, we find that petitioner has failed to carry his burden of establishing that his health issues impeded his ability to meet his tax obligations when he filed the 2004 joint return and when he requested relief under section 6015(f).[24]

With respect to any other factors that are relevant to our determination of whether petitioner is entitled to relief under section 6015(f), we have found: (1) On June 25, 2007, Ms. Haigh paid to respondent $1,726.61 as a bond against the deficiency that respondent determined in the 2004 notice and interest as provided by law as of that date; and (2) around October 1, 2007, respondent applied that bond as a payment against that deficiency and that interest.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry his burden of establishing that it would be inequitable to hold him liable for the portion of the deficiency determined in the 2004 notice that is

---

[24]See <u>Banderas v. Commissioner</u>, T.C. Memo. 2007-129.

attributable to the 10-percent additional tax with respect to Ms. Haigh's IRA distribution.

On the record before us, we find that petitioner has failed to carry his burden of establishing that he is entitled to relief under section 6015(f).

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.[25]

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[25]Respondent contends that our scope of review in this case should be limited to the administrative record that respondent developed before denying petitioner relief under sec. 6015(f). That is because, according to respondent, in <u>Robinette v. Commissioner</u>, 439 F.3d 455 (8th Cir. 2006), revg. 123 T.C. 85 (2004), the United States Court of Appeals for the Eighth Circuit, the Court to which an appeal in this case would normally lie, limited our scope of review in cases under secs. 6320 and 6330 to the Commissioner's administrative record. According to respondent, "it would be incongruous for this Court to look outside the administrative record in § 6015 cases, yet (at least in the Eighth Circuit) be bound by the limits of the administrative record in CDP matters [involving secs. 6320 and 6330]." <u>Robinette</u> did not involve sec. 6015(f) and is not squarely in point. We are not required to follow <u>Robinette</u> in this case. See <u>Golsen v. Commissioner</u>, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971); see also <u>Lardas v. Commissioner</u>, 99 T.C. 490, 494-495 (1992).