T.C. Summary Opinion 2010-129

UNITED STATES TAX COURT

CAROLEE FLYGARE ARGYLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19534-08S.          Filed August 31, 2010.

Carolee Flygare Argyle, pro se.

<u>Rebekah A. Myers</u>, for respondent.

GERBER, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.[1]  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court,

———————————

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code of 1986 as amended.

and this opinion shall not be treated as precedent for any other case.

In a final notice of determination, respondent denied petitioner's request for section 6015 relief from joint and several liability for her unpaid 2002 Federal income tax liability. Because the liability results from an underpayment of tax, petitioner does not qualify for relief under section 6015(b) or (c) and we consider her entitlement to equitable relief under section 6015(f).

## Background[2]

Petitioner resided in Utah when she filed her petition. During the year in issue petitioner was married to James Newkirk and resided in Florida. Petitioner and Mr. Newkirk were employed by AT&T and were laid off during January 2002. Mr. Newkirk withdrew $144,205 from his pension during 2002. Petitioner and Mr. Newkirk sold their home in Florida and moved to Utah in June 2002. By the time petitioner found employment (around August or September of 2002) the withdrawn pension proceeds had been expended on the purchase of a car (approximately $20,000), closing costs on the sale of their home (approximately $10,000 to $20,000), moving expenses (approximately $8,000), and living expenses for the period petitioner was unemployed.

---

[2]The parties' stipulation of facts and the exhibits are incorporated by this reference.

Petitioner and Mr. Newkirk jointly filed a timely Form 1040, U.S. Individual Income Tax Return, for 2002. On the return they reported the pension withdrawal and reported a balance due of $27,539. Neither petitioner nor Mr. Newkirk paid the balance due.

Petitioner and Mr. Newkirk divorced in March 2006. The divorce decree stated that "Should any debts exist from this marriage, each debt shall be the responsibility of the party incurring the debt" but did not specifically assign the unpaid tax liability to either petitioner or Mr. Newkirk. Petitioner has since remarried.

On December 28, 2007, petitioner submitted a Form 8857, Request for Innocent Spouse Relief. On January 23, 2008, respondent issued to petitioner a preliminary determination denying her request. On February 19, 2008, petitioner appealed the preliminary determination by filing a Form 12509, Statement of Disagreement. On May 8, 2008, respondent issued a final notice of determination denying relief. In a document dated July 27, 2009, it was explained that respondent had reconsidered petitioner's request for innocent spouse relief but again determined that she was not entitled to relief.

Petitioner filed a timely petition with the Court for review of respondent's determination to deny relief.

## Discussion

In general, spouses who elect to file a joint Federal income tax return for the taxable year are jointly and severally liable for the entire amount of tax reported on the return even if the income giving rise to the tax liability is attributable to only one of them. Sec. 6013(d)(3); see sec. 1.6013-4(b), Income Tax Regs.

A taxpayer may be relieved from joint and several liability under section 6015(f) if, taking into account all the facts and circumstances, it would be inequitable to hold the taxpayer liable for any unpaid tax or deficiency. The Commissioner has issued revenue procedures listing factors normally considered in determining whether section 6015(f) relief should be granted. See Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.

This Court has jurisdiction to review the Commissioner's denial of section 6015(f) relief using a de novo standard of review. See sec. 6015(e); Porter v. Commissioner, 132 T.C. 203 (2009).

## I. Threshold Conditions for Granting Relief

To be eligible for section 6015(f) relief, the requesting spouse must satisfy the following threshold conditions: (i) The requesting spouse must have filed a joint return for the taxable year for which relief is sought; (ii) relief is not otherwise

available to the requesting spouse under section 6015(b) or (c);
(iii) no assets were transferred between the spouses as part of a
fraudulent scheme by the spouses; (iv) the nonrequesting spouse
did not transfer disqualified assets to the requesting spouse;
(v) the requesting spouse did not file or fail to file the tax
return with fraudulent intent; and (vi) absent enumerated
exceptions, the income tax liability from which relief is sought
is attributable to an item of the nonrequesting spouse.  Rev.
Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298.

Respondent has conceded that petitioner satisfies the above
requirements for section 6015(f) relief.[3]

II.  <u>Circumstances in Which Relief Is Ordinarily Granted</u>

Where the threshold conditions have been met, the
Commissioner will ordinarily grant relief if the requesting
spouse meets the elements set forth under Rev. Proc. 2003-61,
sec. 4.02, 2003-2 C.B. at 298.  To qualify for relief under the
revenue procedure, the requesting spouse must:  (1) No longer be

_____

[3]Respondent conceded that, for purposes of this case, the
Court could proceed with the merits of whether there was an abuse
of discretion in denying petitioner sec. 6015(f) relief even
though her claim for relief was beyond the 2-year period
established by the Secretary.  That is so because this Court's
precedent at the time of trial did not limit taxpayers to 2 years
within which to seek sec. 6015(f) relief.  In addition,
respondent had no right to appeal our holding as petitioner had
elected to have her case heard under the provisions of sec. 7463.
It is also noted that there would be no need to address the 2-
year limitation because petitioner is unsuccessful on the merits.

married to, be legally separated from, or not have been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when she signed the return that the nonrequesting spouse would not pay the tax liability; and (3) suffer economic hardship if relief is not granted.

### 1. Marital Status

Petitioner and Mr. Newkirk were divorced at the time she filed her request for relief.

### 2. Knowledge or Reason To Know

Mr. Newkirk withdrew $144,205 from his pension in 2002. When petitioner signed the 2002 tax return she knew there was a balance due and was aware that she and her former spouse had already spent all of the withdrawn proceeds of the pension. Petitioner therefore knew that Mr. Newkirk did not have any money left to pay their income tax liability.

### 3. Economic Hardship

A requesting spouse suffers economic hardship if paying the tax liability would prevent her from paying "reasonable basic living expenses." Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.; Rev. Proc. 2003-61, sec. 4.02(1)(c), 4.03(2)(a)(ii), 2003-2 C.B. at 298.

Petitioner earns $1,600 per month and has monthly expenses totaling $990 ($200 for utilities, $75 for telephone, $300 for food, $100 for medical expenses, $65 for life insurance, $100 for clothing, and $150 for television and Internet services).

On Form 8857 petitioner claimed monthly expenses for rent ($500) and car expenses ($584), but petitioner testified that these expenses are in fact currently paid by Mr. Argyle. At trial petitioner also claimed that she has additional expenses for her son's car and a dirt bike, but assuming arguendo that these expenses constitute reasonable basic living expenses, petitioner gave no indication as to the amounts of these additional expenses.

Because petitioner's income exceeds her reasonable basic living expenses by $610 per month, she would not meet the economic hardship requirement if relief is denied.

Accordingly, petitioner is not entitled to relief under Rev. Proc. 2003-61, sec. 4.02.

III.  Rev. Proc. 2003-61, Sec. 4.03 Factors

Where a requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, a determination to grant relief may nevertheless be made under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299. Rev. Proc. 2003-61, sec. 4.03, provides a nonexclusive list of factors the Internal Revenue Service will consider in making that determination:  (1) Marital status;

(2) economic hardship; (3) knowledge or reason to know; (4) nonrequesting spouse's legal obligation; (5) significant benefit; (6) good-faith effort to comply with income tax laws; (7) spousal abuse; and (8) mental or physical health. No single factor is determinative, and all factors are to be considered and weighed appropriately. See <u>Haigh v. Commissioner</u>, T.C. Memo. 2009-140.

### 1. Marital Status

Petitioner and Mr. Newkirk were divorced in March 2006. This factor thus weighs in favor of relief.

### 2. Economic Hardship

As discussed <u>supra</u>, petitioner will not suffer economic hardship if relief is denied. This factor therefore weighs against relief.

### 3. Knowledge or Reason To Know

As discussed <u>supra</u>, petitioner knew that her former spouse would not pay the joint tax liability at the time she signed the return. This factor weighs against relief.

### 4. Nonrequesting Spouse's Legal Obligation

The divorce decree did not direct petitioner's former spouse to pay the 2002 joint tax liability. Since Mr. Newkirk had no legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement, this factor is neutral.

### 5. Significant Benefit

Petitioner received a significant benefit from nonpayment of the tax liability because she and her former spouse used some of the withdrawn pension proceeds to purchase a new car. This factor thus weighs against relief.

### 6. Good-Faith Effort To Comply With Income Tax Laws

Petitioner and her current husband's 2008 tax return was stamped by respondent as received on May 4, 2009, but the return was signed by petitioner and Mr. Argyle on April 13, 2009. There is no evidence as to when the return was postmarked. Respondent stated on brief, however, that he "is not aware of any information that Mrs. Argyle has not made a good-faith effort to comply with income tax laws in the taxable years following the 2002 taxable year". This factor thus favors relief.

### 7. Spousal Abuse

Mr. Newkirk did not abuse petitioner during their marriage. This factor is thus neutral.

### 8. Mental or Physical Health

There is no evidence or allegation that petitioner was in poor mental or physical health at the time she signed the return or at the time she requested section 6015(f) relief. This factor is thus neutral.

IV. <u>Conclusion</u>

Of the factors listed in Rev. Proc. 2003-61, sec. 4.03, three weigh against relief (lack of economic hardship, knowledge or reason to know, and significant benefit), two favor relief (marital status and good-faith effort to comply with tax laws), and three are neutral (nonrequesting spouse's legal obligation, spousal abuse, and mental or physical health). After considering and weighing all the factors, we find that it is equitable to hold petitioner liable for her unpaid 2002 tax liability.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.