T.C. Memo. 2009-249


UNITED STATES TAX COURT


LINDA A. BRUEN, Petitioner, AND MICHAEL F. BRUEN, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14537-08.                    Filed November 3, 2009.


        P was married to I in 2002 and 2003, but she
originally filed her tax returns for those years using
the status of married filing separately, and she paid
her separate liabilities.  P and I divorced in 2004,
and P was ordered pursuant to a divorce decree to file
amended tax returns for those years with I using the
status of married filing jointly.  The divorce decree
provided that P and I would each be liable for half of
their 2003 Federal income tax, but it was silent as to
the 2002 tax liability.  The amended joint tax returns
for 2002 and 2003 showed a balance of tax due that was
attributable solely to I's income.  P requested
equitable relief from the IRS under I.R.C. sec. 6015(f)
for both the 2002 and 2003 tax liabilities, but the IRS
denied P's request.

        <u>Held</u>:  P is entitled to equitable relief under
I.R.C. sec. 6015(f) with respect to half of the 2002
and 2003 liabilities.

Rocco C. Senese, for petitioner.

Michael F. Bruen, pro se.

Molly H. Donohue, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GUSTAFSON, Judge:  This case arises from petitioner Linda A. Bruen's request for "innocent spouse" relief from joint liability under section 6015(f)[1] for the following amounts of Federal income tax reported on joint returns for 2002 and 2003:

| Tax Year | Liability |
|---|---|
| 2002 | $19,734 |
| 2003 | 41,762 |

The Internal Revenue Service (IRS) denied Ms. Bruen's request for relief, for the principal reason that (it concluded) she had "knowledge or reason to know" that her former husband, Michael F. Bruen, would not pay the joint Federal income tax liabilities for 2002 and 2003.  In response, Ms. Bruen timely filed a petition with the Court.  The issue for decision is whether Ms. Bruen is entitled to equitable relief under section 6015(f).  We find that Ms. Bruen did not have "knowledge or reason to know" that Mr. Bruen would fail to pay his half of the 2002 and 2003 tax

---

[1]Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, and all citations of Rules refer to the Tax Court Rules of Practice and Procedure.

liabilities. We therefore find that Ms. Bruen is entitled to relief under section 6015(f) with respect to that portion of the liabilities.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts filed June 22, 2009, and the attached exhibits are incorporated herein by this reference. Trial of this case was held in Boston, Massachusetts, on June 22, 2009. Ms. Bruen and Mr. Bruen testified. Respondent called no witnesses. At the time the petition was filed, Ms. Bruen resided in Massachusetts. Mr. Bruen intervened in this action pursuant to Rule 325(b). At the time Mr. Bruen filed his notice of intervention, he resided in Massachusetts.

The Bruen Family and Their Finances

Ms. Bruen and Mr. Bruen married in 1973 and lived together in their house in Reading, Massachusetts. They have two daughters, one born in 1984 and the other born in 1988.

Ms. Bruen is a high school graduate. For the first 11 years of her marriage, she worked as an accounting clerk and trust bookkeeper for various law firms. After having two children, Ms. Bruen became a homemaker. During 2002 and 2003 Ms. Bruen invested in the stock market and operated a craft business from her home.

Mr. Bruen is a college graduate. During most of the marriage, Mr. Bruen worked for various telecommunications companies, including Avaya, Inc. However, Mr. Bruen was unemployed in 2002. In 2002 Mr. Bruen's income arose, in large part, from (i) unemployment insurance, (ii) distributions from his individual retirement account (IRA),[2] and (iii) payments from the Avaya, Inc. Pension Plan for Salaried Employees (pension plan). In 2003 Mr. Bruen ran his own communication systems installation business, and his income arose, in large part, from (i) profit from that business, (ii) distributions from his IRA, and (ii) payments from his pension plan. Mr. Bruen also worked part time as a soccer referee in 2002 and 2003.

The Bruens' Expenditures

Ms. Bruen and Mr. Bruen had a joint checking account at Reading Cooperative Bank. During their marriage and the pendency of their divorce, the Bruens both deposited some of their income into this account, which Ms. Bruen used to pay the household

---

[2]During the tax years at issue, Mr. Bruen had a so-called traditional IRA under section 408(a). In general, contributions to a traditional IRA are deductible when made, but distributions from it are subject to tax. See sec. 408; Orzechowski v. Commissioner, 69 T.C. 750, 755 (1978), affd. 592 F.2d 677 (2d Cir. 1979). In addition, so-called early distributions from a traditional IRA, which are made before the date on which the taxpayer reaches the age of 59-1/2, are generally subject to a 10-percent additional tax under section 72(t). The Bruens' joint Forms 1040, U.S. Individual Income Tax Return, for 2002 and 2003 properly reflect that the distributions from Mr. Bruen's traditional IRA not only were taxable but also were subject to the 10-percent additional tax under section 72(t).

bills. During 2002 and 2003, the Bruens' older daughter was attending college. The Bruens had saved for their daughters' college expenses by setting up a Uniform Trust for Minors Account (UTMA) for each daughter under Ms. Bruen's name. During 2002 and 2003, the UTMA for the Bruens' older daughter held more than $80,000. However, Ms. Bruen refused to pay her daughter's tuition and expenses with funds from the UTMA because she believed Mr. Bruen had sufficient funds in his personal accounts "which should've covered it." Mr. Bruen ultimately paid those expenses with distributions from his IRA and a loan from SLM Corporation, which is commonly known as Sallie Mae. The only other major expenditures by either of the Bruens during the pendency of their divorce were the purchases of two new vehicles. Ms. Bruen sold her Volvo for $10,000 and purchased a 2003 Mercedes-Benz sport utility vehicle for $43,273 in June 2003. Mr. Bruen traded in his Toyota Camry for $5,500 and purchased a 2004 Honda Pilot for $32,451 in 2003.

The Bruens' Separate Forms 1040

Before the tax years at issue, Ms. Bruen had been the principal tax return preparer for the family, and each year she prepared and filed a Form 1040, U.S. Individual Income Tax Return, for both herself and Mr. Bruen using the status of married filing jointly. Ms. Bruen paid the balance of tax due

that was shown on those Forms 1040 with funds from the joint checking account.

However, in April 2003 Ms. Bruen ended her practice of filing a joint Form 1040 with her husband and instead filed a 2002 Form 1040 using the status of married filing separately. On that Form 1040 she reported adjusted gross income of $2,904 and no balance due. On April 15, 2003, the date on which a 2002 Form 1040 was due from both of the Bruens, Ms. Bruen notified Mr. Bruen that--contrary to her prior practice--she was not preparing or signing a joint Form 1040 with him.

In 2004 Ms. Bruen likewise filed a Form 1040 for 2003 using the status of married filing separately. On that separate return she reported adjusted gross income of $51,775 and a balance due of $5,858. Ms. Bruen paid the balance due that was shown on that Form 1040.

On October 22, 2003, Mr. Bruen filed his own Form 1040 for 2002 using the status of married filing separately. On his 2002 return he reported adjusted gross income of $103,359 and a balance due of $23,648. On March 3, 2005, Mr. Bruen filed a Form 1040 for 2003 again using the status of married filing separately. On his 2003 return he reported adjusted gross income of $131,095 and a balance due of $23,066. Mr. Bruen never paid the balance due that was shown on either of those returns.

## The Bruens' Divorce

The Bruens' marriage began to deteriorate in 1999 and 2000, and Ms. Bruen eventually filed for divorce in the Probate and Family Court of Massachusetts on September 23, 2003. The divorce, which was finalized in February 2004, was contentious and extremely difficult for the Bruens. However, the family court declined to remove Mr. Bruen from the family home on the date of the divorce. Instead, the Bruens continued to live in the same house until November 18, 2004, when the family court issued a restraining order against Mr. Bruen and he was ordered to leave.

Ms. Bruen and Mr. Bruen each alleged (on their Forms 8857, Request for Innocent Spouse Relief, and 12510, Questionnaire for Requesting Spouse, and otherwise) domestic abuse by the other spouse, but neither of these allegations was corroborated with other evidence. Moreover, in spite of these allegations, the family court allowed Ms. Bruen and Mr. Bruen to live in the same house with their children for 9 months after their divorce. We do not find that any abuse has been substantiated.

## March 2005 Family Court Judgment

On March 22, 2005, the family court entered an Amended Judgment Following Divorce Nisi in the Bruens' divorce case, which purported to resolve "all other issues outstanding" with respect to their divorce. The judgment granted Ms. Bruen

physical custody of the younger daughter[3] and granted Mr. Bruen
visitation rights. Ms. Bruen was ordered to add Mr. Bruen's name
to the UTMAs for the benefit of their daughters, so that both of
their signatures were required to withdraw funds from those
accounts. In addition, the judgment ordered the Bruens to use
the UTMAs "solely for the children's education, their education
costs, and their room and board costs while at college."

The judgment also divided the Bruens' assets, taking into
consideration their debts and other liabilities, including
Federal income tax liabilities. With some exceptions,[4] the
marital assets were divided between the Bruens as follows: 52.5
percent of the marital assets were awarded to Ms. Bruen, and 47.5
percent were awarded to Mr. Bruen. Ms. Bruen was also given the
option to buy out Mr. Bruen's 47.5 percent interest in the family
home, which she exercised in 2005. In that year she paid

---

[3]On the date that the judgment was entered, the younger
daughter was 16 years old (i.e., a minor). The older daughter
was 20 years old (i.e., she had reached the age of majority), and
there was therefore no need for the family court to rule on
custody as to her.

[4]The March 2005 judgment provided: "Except for the Avaya
Pension Plan, the parties [sic] assets will be divided as
follows: 52.5% to * * * [Ms. Bruen], and 47.5% to * * *
[Mr. Bruen]." A prior judgment of the family court ordered the
Bruens to split Mr. Bruen's payments from his pension plan 50-50.

Mr. Bruen a net amount of $374,416.25 for his interest in the house[5] and to settle their other obligations under the judgment.[6]

As is stated above, Mr. and Ms. Bruen had each already filed separate returns. However, the March 2005 judgment ordered Ms. Bruen and Mr. Bruen to prepare and file amended Federal and State tax returns for 2002 and 2003 using the status of married filing jointly. The judgment also ordered that Ms. Bruen and Mr. Bruen would be "equally liable for th[e] 2003 tax liability, interest, and penalties, for the reason that the parties are now divorced and much of the income they have received and lived on has not been subject to withholding taxes." However, the judgment made no explicit provision as to the 2002 tax liability.

---

[5]Ms. Bruen paid Mr. Bruen $328,225 of the $374,416.25 to buy out his interest in the house. The judgment provided that "[t]he parties have stipulated that the current value of the real estate at * * * Reading, Massachusetts is Seven Hundred Sixty Thousand ($760,000) Dollars and that there is an outstanding mortgage of approximately Sixty Nine Thousand ($69,000) Dollars." Using these stipulated numbers, the Bruens' family home had a net value of $691,000, and Mr. Bruen's 47.5-percent share of that net value was $328,225.

[6]The judgment required Ms. Bruen to pay Mr. Bruen a total of $62,127.25 from her three IRAs and her individually held stocks. On the other hand, the judgment required Mr. Bruen to pay to Ms. Bruen a total of $15,936, which consisted of $6,704 to compensate her for attorney's fees in the divorce case, plus $9,232 that was due under a contempt order the family court had previously entered on April 23, 2004. The 2005 net payment did not account for continuing payments from Mr. Bruen to Ms. Bruen under the pension plan, or for alimony and child support.

Joint Forms 1040

The Bruens employed Theresa Sabelli, a certified public accountant with Sabelli & Co., P.C., to prepare their joint Forms 1040 and Forms 1040X, Amended U.S. Individual Income Tax Return, for 2002 and 2003 in accordance with the family court's March 2005 judgment. On April 12, 2006, Ms. Bruen signed those joint Forms 1040 and 1040X. On both of the Forms 1040X, Ms. Bruen wrote "under protest pursuant to Amended Judgement [sic] following Divorce Nisi" above her signature. Ms. Bruen's statement that the Forms 1040X were signed "under protest" was meant to register her disagreement with being forced to pay any of the joint tax liabilities, not to nullify her signature or disavow an intention to file a joint return. On April 13, 2006, Mr. Bruen signed the joint Forms 1040 and 1040X. On April 25, 2006, the IRS received the Forms 1040 and 1040X. The Forms 1040 and 1040X showed balances due of $18,342 for 2002 and $19,428 for 2003. These balances due resulted entirely from the inclusion of Mr. Bruen's income. The IRS assessed the 2002 tax liability on October 2, 2006, and the 2003 tax liability on August 14, 2006.

Presumably, the family court ordered the joint filings in order to reduce the Bruens' aggregate tax liability and maximize the money available to both spouses. The joint filing did have that effect: The originally reported separate tax liabilities for 2002 and 2003 had totaled $69,378 (before payments), but the

joint tax liabilities totaled only $61,496 (before payments), for a savings of $7,882.

Mr. Bruen's Request for Innocent Spouse Relief

On March 17, 2006, Mr. Bruen filed a Form 8857 to request separation of liabilities and equitable relief with respect to his joint Federal income tax liabilities for 2002 and 2003. In his request, Mr. Bruen cited the family court's March 2005 judgment--which ordered the Bruens to file joint Forms 1040 and split the 2003 tax liability 50-50--and he stated that Ms. Bruen was failing to comply with that judgment. The IRS denied his claim for relief. Mr. Bruen did not appeal this determination, and his request is not at issue in this case.

Ms. Bruen's Request for Innocent Spouse Relief

On March 13, 2007, Ms. Bruen filed a Form 8857 to request equitable relief with respect to her joint Federal income tax liabilities for 2002 and 2003. After receiving information from both Mr. Bruen and Ms. Bruen, an IRS financial specialist rendered a preliminary determination to deny her request for innocent spouse relief but stated that the IRS would reconsider that determination if Ms. Bruen were to submit additional information on Form 12510 within 30 days. On November 28, 2007, Ms. Bruen submitted that information on Form 12510 and appealed the preliminary determination by filing a Form 12509, Statement of Disagreement.

After both Mr. Bruen and Ms. Bruen gave additional information to the IRS by telephone, an IRS financial technician made a second preliminary determination on January 11, 2008, to deny Ms. Bruen's request for relief under section 6015(f).[7]  In her Amended Workpaper, dated January 11, 2008, the technician evaluated Ms. Bruen's request for innocent spouse relief under Rev. Proc. 2003-61, 2003-2 C.B. 296.  In that workpaper the technician concluded that Ms. Bruen met the threshold requirements to submit a request for innocent spouse relief under Rev. Proc. 2003-61, section 4.01, 2003-2 C.B. at 297.  However, the technician concluded that Ms. Bruen failed to qualify for relief under Rev. Proc. 2003-61, section 4.02, 2003-2 C.B. at 298, because she had knowledge or reason to know that her joint Federal income tax liabilities for 2002 and 2003 would not be paid.  The technician also concluded that Ms. Bruen failed to qualify for relief under Rev. Proc. 2003-61, section 4.03, 2003-2 C.B. at 298, because (i) there was "No marital abuse", (ii) neither spouse had "poor mental or physical health", (iii) both spouses were "equally liable for the 2003 liability" under the family court's March 2005 judgment, and (iv) Ms. Bruen "had knowledge or reason to know" the 2002 and 2003 tax

---

[7]Since this was the first time that the technician substantively evaluated Ms. Bruen's request for relief, she issued Ms. Bruen a preliminary determination before issuing a final determination.

liabilities would not be paid.  On March 19, 2008, the IRS issued a Final Determination to deny Ms. Bruen's request.  In response, Ms. Bruen timely filed a petition with the Court.  Respondent concedes that Ms. Bruen is currently unemployed and is struggling financially, in part, because one of Ms. Bruen's daughters has cancer.

## OPINION

### I.   Standard and Scope of Review

The Tax Court has held that, for determining whether a taxpayer is entitled to equitable relief under section 6015(f), we conduct a trial de novo, in which we may consider evidence introduced at trial which was not included in the administrative record, Porter v. Commissioner, 130 T.C. 115, 117 (2008), and we do not review for abuse of discretion but instead employ a de novo standard of review, Porter v. Commissioner, 132 T.C. __ (2009).  Respondent contends, to the contrary, that when the Court reviews a denial of relief under section 6015(f), it must apply an abuse-of-discretion standard of review and must limit the scope of its review to the administrative record.  We have held otherwise in the two Porter opinions cited above, and we do not repeat in this opinion the reasons for those holdings.

An appeal in this case would lie to the U.S. Court of Appeals for the First Circuit.  That court held in Murphy v. Commissioner, 469 F.3d 27, 31 (1st Cir. 2006), affg. 125 T.C. 301

(2005), that a "record rule" applies to limit the Tax Court's scope of review to the administrative record in a collection due process (CDP) proceeding under sections 6320 and 6330.[8] Assuming arguendo the Court of Appeals' application of a "record rule" in the CDP context, the CDP provisions of sections 6320 and 6330 are different from the innocent spouse provisions of section 6015, and those differences include the following:

The CDP petitioner's agency-level remedies are described at some length in section 6330(a), (b), and (c), and section 6330(d)(2) provides that the CDP petitioner must first "exhaust[] all administrative remedies" before coming to court; but section 6015 makes no explicit provision of agency-level remedies for innocent spouse relief and says nothing about exhausting them. The agency's CDP action is repeatedly characterized in section 6330 as a "hearing", but there is no agency hearing explicitly provided for the innocent spouse in section 6015.[9] The taxpayer's CDP submission to the Tax Court under

---

[8]This Court held to the contrary in Robinette v. Commissioner, 123 T.C. 85 (2004), revd. 439 F.3d 455, 460 (8th Cir. 2006), and in CDP cases we generally do not follow the record rule. However, in cases appealable to Courts of Appeals that follow the record rule, we do follow those precedents pursuant to our "Golsen rule". See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

[9]See Porter v. Commissioner, 130 T.C. 115, 135 (2008) (Thornton, J., concurring); Friday v. Commissioner, 124 T.C. 220, 222 (2005) ("There is in section 6015 no analog to section 6330 granting the Court jurisdiction after a hearing at the Commissioner's Appeals Office").

section 6330(d) is called an "appeal" and is not referred to as a "petition" anywhere in the statute, while section 6015(e) provides that the innocent spouse files a "petition" that is nowhere called an "appeal". The Tax Court "determine[s]" innocent spouse relief, sec. 6015(e)(1)(A), but simply has "jurisdiction" over the agency's CDP determination, sec. 6330(d)(1).[10]

All these differences in statutory vocabulary suggest that even if a CDP case under sections 6320 and 6330 is held to be governed by a "record rule", as the Court of Appeals for the First Circuit holds, the same rule is not warranted for an innocent spouse case under section 6015(f). We therefore follow our Porter decisions and apply a de novo standard of review and scope of review in deciding this case under section 6015(f).

II. Joint and Several Liability and Section 6015(f) Relief

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income, and liability for the resulting tax is joint and several. See also sec. 1.6013-4(b), Income Tax Regs. (26 C.F.R.). That is, each spouse is responsible for the entire joint tax liability. However, section 6015(f) provides as follows:

---

[10]See Porter v. Commissioner, supra at 120; id. at 134-135 (Thornton, J., concurring).

SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if--

(1)  taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2)  relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

Thus, a taxpayer may be relieved from joint and several liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable. Except as otherwise provided in section 6015, the taxpayer bears the burden of proof.  See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

In accord with the statutory provision that section 6015(f) relief is to be granted "[u]nder procedures prescribed by the Secretary," the Commissioner has issued Revenue Procedures to guide IRS employees in determining whether a requesting spouse is entitled to relief from joint and several liability.  See Rev. Proc. 2003-61, supra, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.  Revenue Procedure 2003-61, supra, lists the factors that IRS employees should consider, and the Court consults those same factors when reviewing the IRS's denial of relief.  See Washington v. Commissioner, 120 T.C. 137, 147-152 (2003).

A.   Threshold Eligibility: Rev. Proc. 2003-61, Sec. 4.01

Revenue Procedure 2003-61 sets out, in section 4.01, seven threshold conditions that all requesting spouses must meet in order for the IRS to grant relief pursuant to section 6015(f).[11] Respondent concedes that Ms. Bruen fulfills those conditions.

B.   Circumstances Ordinarily Allowing Relief: Rev. Proc. 2003-61, Sec. 4.02

1.   Three Conditions

For a requesting spouse who satisfies the threshold conditions of Revenue Procedure 2003-61, section 4.01, section 4.02 sets out the circumstances in which the IRS will ordinarily grant relief under section 6015(f) for an underpayment of a properly reported liability.  To qualify for relief under section 4.02, the requesting spouse must satisfy three conditions.  She must (i) be no longer married to, be legally

---

[11]See Rev. Proc. 2003-61, sec. 4.01(1)-(7), 2003-2 C.B. 296, 297 (all requesting spouses must meet seven threshold conditions: (i) The requesting spouse filed a joint return for the taxable year for which he or she seeks relief; (ii) relief is not available to the requesting spouse under section 6015(b) or (c); (iii) the requesting spouse applies for relief no later than 2 years after the date of the Service's first collection activity after July 22, 1998, with respect to the requesting spouse; (iv) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (v) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (vi) the requesting spouse did not file or fail to file the return with fraudulent intent; and (vii) absent enumerated exceptions, the income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return).  As to requirement (iii) above, we have held that the two-year rule is invalid.  See Lantz v. Commissioner, 132 T.C. __ (2009).

separated from, or have not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief; (ii) have had no knowledge or reason to know when the return was signed that the nonrequesting spouse would not pay the tax liability; and (iii) suffer economic hardship if relief is not granted. Respondent concedes that Ms. Bruen satisfies the first and third of these requirements. However, respondent contends that Ms. Bruen fails to satisfy the second requirement because she knew or had reason to know that Mr. Bruen would not pay their joint Federal income tax liabilities for 2002 and 2003.

To satisfy the second requirement, the requesting spouse must establish that: (i) When the requesting spouse signed the return, the requesting spouse had no knowledge or reason to know that the tax reported on the return would not be paid; and (ii) it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the tax shown due. Morello v. Commissioner, T.C. Memo. 2004-181; Ogonoski v. Commissioner, T.C. Memo. 2004-52; Collier v. Commissioner, T.C. Memo. 2002-144.

### 2. Ms. Bruen's Knowledge or Reason To Know

Respondent contends that Ms. Bruen is not entitled to innocent spouse relief with respect to any portion of her joint Federal income tax liabilities for 2002 and 2003, because the family court had ordered her to pay half of the 2003 tax

liability and she therefore knew or had reason to know that Mr. Bruen would not pay that half.  However, section 6015(f) allows relief "for any unpaid tax or any deficiency (or any portion of either)" (emphasis added), and Revenue Procedure 2003-61, section 4.02, implements this allowance of partial relief.  Therefore, to address respondent's contention we consider below the distinct portions of the liability:  First, we agree that Ms. Bruen is not entitled to innocent spouse relief as to the portion of the tax liabilities that the family court had ordered her to pay.  Second, we find that she is entitled to relief for the portion that the family court ordered Mr. Bruen to pay.  Third, we find that, although the family court made no explicit order as to the 2002 tax liability as it had for 2003, the spouses do share that 2002 tax liability equally, and Ms. Bruen is therefore entitled to be relieved from half of that liability.

### a.  Mr. Bruen's Portion

The family court explicitly ordered Mr. Bruen to bear a portion of the tax liability, and it ordered Ms. Bruen to pay him funds from which he could easily have done so.  Ms. Bruen paid Mr. Bruen a net amount of $374,416.25 in the course of dividing their assets--over six times the $61,496 sum of the 2002 and 2003 tax liabilities, and over a dozen times Mr. Bruen's half of that sum.  There is no dispute that Mr. Bruen had the means to pay his half of the 2002 and 2003 tax liabilities, and it was reasonable

for Ms. Bruen to believe that he would pay his half of those tax liabilities. However low an opinion she held of Mr. Bruen's rectitude and sense of responsibility, she was not required to assume that he would defy a court order when he had stated no intention to do so and he had the means to comply with it--means that she herself placed into his hands.

Ms. Bruen has proved that she did not know or have reason to know that Mr. Bruen's portion would not be paid. We therefore hold that Ms. Bruen is entitled to relief under Revenue Procedure 2003-61, section 4.02, with respect to Mr. Bruen's portion of the tax liabilities.

### b. Ms. Bruen's Portion

However, it is just as clear that, after the entry of that family court order, Ms. Bruen had no reason to suppose that Mr. Bruen would pay the portion that the court had instead ordered her to pay. When Ms. Bruen signed the joint Forms 1040 and 1040X for 2002 and 2003 on April 12, 2006, she did so--though "under protest"--in order to comply with the family court's March 2005 judgment that explicitly made her liable for half of the 2003 tax liability. Ms. Bruen does not allege, nor does the record show, that she misunderstood the judgment at the time she signed the joint Forms 1040 and 1040X. Ms. Bruen has a high school education, worked as an accounting clerk and trust bookkeeper for various law firms for the first 11 years of her

marriage, was a savvy investor who made tens of thousands of dollars in the stock market, and ran a small business from her home. Moreover, Ms. Bruen was the principal tax return preparer for her family and was responsible for preparing and filing their tax returns and paying their taxes for almost 30 years. We find that Ms. Bruen is intelligent and resourceful, and that she is reasonably sophisticated in tax and financial matters. She knew that signing the joint return made her liable--and, indeed, that is why she resisted signing it. In the middle of contentious divorce proceedings, it was <u>not</u> reasonable for Ms. Bruen to suppose that Mr. Bruen would gratuitously pay a liability that the court had assigned to her. See <u>Morello v. Commissioner</u>, <u>supra</u>. She knew or had reason to know that Mr. Bruen would not do so, and she is not entitled to relief under Revenue Procedure 2003-61, section 4.02, as to the portion that the family court ordered her to pay.

c. <u>The 2002 Tax Liability</u>

The foregoing analysis applies easily to the 2003 liability. When the family court ordered the Bruens to prepare and file amended Federal and State tax returns for 2002 <u>and</u> 2003 using the status of married filing jointly, it also ordered that each of the Bruens would be "equally liable for th[e] <u>2003</u> tax liability, interest, and penalties". (Emphasis added.) In so saying, the

family court was silent as to the payment of the 2002 tax liability, so we address that liability separately.

Respondent's contention is that the family court failed to address the payment of the 2002 tax liability because it mistakenly assumed that liability had already been paid. We agree. The family court's March 2005 judgment purported to resolve "all other issues outstanding" with respect to the Bruens' divorce. If the family court had been aware of any pending questions as to the 2002 tax liability, it would have addressed them in its March 2005 judgment. The family court ordered the Bruens to file joint returns for both years, obviously intending to require Ms. Bruen and Mr. Bruen to bear that liability jointly. The proportions that the family court would have intended the respective spouses to pay for 2002 is clear from what it did order:

For the unpaid liability that the family court did explicitly address (the 2003 tax liability), it ordered each spouse to pay half. The court so ordered for a reason that applied to 2002 just as well as it applied to 2003--i.e., "for the reason that the parties are now divorced and much of the income they have received and lived on has not been subject to withholding taxes." That is, in the tax years at issue, both spouses had "lived on" and benefited from Mr. Bruen's income,

which had been used, in part, to pay their older daughter's college tuition and expenses as well as their household bills.

There is no evidence that Ms. Bruen expected the family court or Mr. Bruen to treat the 2002 tax liability differently from the 2003 tax liability. The family court divided the Bruens' assets roughly in half (i.e., a 52.5-47.5 percentage split) and divided the named liabilities roughly in half. There is no indication that the court intended to assign 100 percent of the 2002 tax liability to be paid by Mr. Bruen, after requiring a joint return. Instead, the general tenor of the judgment called for a 50-50 split. Therefore, we find that Ms. Bruen believed-- and that it was reasonable for her to believe--that Mr. Bruen would pay half of the 2002 tax liability. However, it would <u>not</u> have been reasonable for her to believe--and we find that she did <u>not</u> believe--that he would pay any more than half of that liability.

We therefore find for 2002 as we did for 2003: Ms. Bruen reasonably anticipated that Mr. Bruen would pay half--but only half--of the liability. She did not know or have reason to know when she signed their joint Forms 1040 and 1040X that Mr. Bruen would refuse altogether to pay any of the 2002 tax liability; but she did know (or she had reason to know) that Mr. Bruen would not pay <u>her</u> half. She is therefore entitled to relief, under Revenue

Procedure 2003-61, section 4.02, for half of the 2002 and 2003 tax liabilities, but only half.

C.   Alternative Facts-and-Circumstances Test: Rev. Proc. 2003-61, Sec. 4.03

Where the requesting spouse satisfies the threshold conditions of Revenue Procedure 2003-61, section 4.01, but fails to qualify for relief under section 4.02, she may nevertheless obtain relief under the facts and circumstances test of section 4.03.  We have found that Ms. Bruen qualified under section 4.02 for relief from only half of the liability for each year in issue.  We therefore look to the facts-and-circumstances test of section 4.03 to determine whether Ms. Bruen is entitled to relief from the remainder--i.e., the other half of the 2002 and 2003 tax liabilities.  The IRS considers a "nonexclusive list of factors" to determine whether "taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable":  (i) whether the requesting spouse is separated or divorced from the nonrequesting spouse; (ii) whether the requesting spouse would suffer economic hardship if not granted relief; (iii) whether the requesting spouse knew or had reason to know that the other spouse would not pay the liability; (iv) whether the nonrequesting spouse has a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or agreement; (v) whether the requesting spouse received a significant benefit from the item giving rise to the deficiency;

and (vi) whether the requesting spouse has made a good faith effort to comply with the tax laws for the taxable years following the taxable year to which the request for such relief relates.  Id. sec. 4.03(2)(a), 2003-2 C.B. at 298-299.

Other factors that may be considered are (i) whether the nonrequesting spouse abused the requesting spouse and (ii) whether the requesting spouse was in poor mental or physical health at the time he or she signed the tax return or at the time he or she requested relief.  Id. sec. 4.03(2)(b), 2003-2 C.B. at 299.

We consider all relevant facts and circumstances in determining whether the taxpayer is entitled to innocent spouse relief.  Porter v. Commissioner, 132 T.C. at __ (slip op. at 12-13); Lantz v. Commissioner, 132 T.C. __ (2009).  No single factor is determinative, and all factors are to be considered and weighted appropriately.  Haigh v. Commissioner, T.C. Memo. 2009-140.

> 1. Factors

> > a. Marital Status

Ms. Bruen was divorced from Mr. Bruen when she filed her request for innocent spouse relief.  This factor weighs in favor of relief.  See McKnight v. Commissioner, T.C. Memo. 2006-155.

b.   Economic Hardship

Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses.  Butner v. Commissioner, T.C. Memo. 2007-136.  Respondent concedes that Ms. Bruen is unemployed and struggling financially, and this factor weighs in favor of relief.

c.   Knowledge or Reason To Know

As is discussed supra in part II.B.2, Ms. Bruen has failed to establish that she did not know or have reason to know, when she signed the Forms 1040 and 1040X, that Mr. Bruen would not pay more than half of the tax liabilities.  Rather, she knew he would not.  This factor weighs heavily against granting relief as to more than half of the tax liabilities.  See Beatty v. Commissioner, T.C. Memo. 2007-167.

d.   Nonrequesting Spouse's Legal Obligation

The family court's March 2005 judgment ordered Ms. Bruen-- not Mr. Bruen--to pay her half of the tax liabilities.  The judgment is explicit as to 2003, and Ms. Bruen has presented no evidence that she, Mr. Bruen, or the family court expected the 2002 tax liability to be treated any differently.

It was the particular role and jurisdiction of the family court to consider the Bruens' assets and liabilities, to assess the respective responsibilities and culpabilities of the

divorcing spouses, and to allocate assets and liabilities in accordance with their needs and the equities of their situation. We are not bound (by collateral estoppel or otherwise) to the determinations of the State family court, and that court does not have the power to adjust the parties' Federal tax liabilities. However, in determining what is "equitable" under section 6015(f) for relief of a joint tax liability, it is sensible in this instance that we assign considerable weight to the judgment of the court that had plenary responsibility for allocating their debts and held--in all the instances that were presented to it-- that Ms. Bruen should pay half the liability.

This factor weighs heavily against granting Ms. Bruen relief as to more than half of the tax liabilities.

### e. Significant Benefit

While Ms. Bruen did share in the benefit of Mr. Bruen's income in 2002 and 2003, there is nothing in the record that indicates Ms. Bruen received any significant or extraordinary benefit from her and Mr. Bruen's unpaid tax liabilities. Therefore, this factor weighs moderately in favor of relief. See Magee v. Commissioner, T.C. Memo. 2005-263.

### f. Compliance With Federal Tax Laws

Respondent has not alleged, nor does the record show, that Ms. Bruen has failed to comply with the Federal income tax laws

in succeeding years.  This factor weighs in favor of relief.  See
Fox v. Commissioner, T.C. Memo. 2006-22.

        g.    Abuse

    As discussed above, Ms. Bruen alleged on her Forms 8857 and
12510 that she had been a victim of domestic abuse.  However, we
find that she did not substantiate those allegations.  Ms. Bruen
relied solely on her own testimony and did not corroborate it
with any other evidence.  Moreover, in spite of these
allegations, the family court allowed Ms. Bruen and Mr. Bruen to
live together with their children for 9 months after their
divorce.  Therefore, this factor is neutral.  See Magee v.
Commissioner, supra.

        h.    Mental or Physical Health

    Ms. Bruen has not alleged, nor does the record show, that
her mental or physical health was poor at the relevant times.
Therefore, this factor is neutral. See id.

        2.    Weighing the Factors

    As to Ms. Bruen's request for equitable relief beyond what
the Court allows in part II.B, four factors weigh in favor of
relief, two factors weigh against relief, and two factors are
neutral.  However, we find that the two factors that weigh
against relief both weigh very heavily and are decisive:  Mr. and
Ms. Bruen were each under explicit court order to pay half the
joint Federal income tax liability for 2003, and Ms. Bruen must

have known that Mr. Bruen would not pay more than half for either 2002 or 2003. The family court's general determination that each spouse ought to pay half of the family's liabilities is important in our conclusion that Ms. Bruen <u>should</u> be excused from half the liability in both years; but that same determination yields the conclusion that she should <u>not</u> be excused from any more than half. On the basis of all of the relevant facts and circumstances, we conclude that it is not inequitable to hold Ms. Bruen liable for half of the tax liabilities.

We therefore hold that Ms. Bruen is entitled to innocent spouse relief under section 6015(f) with respect to half--but only half--of the joint Federal income tax liabilities for 2002 and 2003.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.